# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of: Pinecrest Golf Club,   :
Inc. From the Decision Dated   :
November 2, 2022, of the Montgomery   :
Township Zoning Hearing Board   :
                                      :  No. 1444 C.D. 2023
Appeal of: Pinecrest Golf Club, Inc.   :  Argued: March 4, 2025


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                  HONORABLE LORI A. DUMAS, Judge
                  HONORABLE MATTHEW S. WOLF, Judge


**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
JUDGE WOLF                                        FILED:  April 1, 2025


        Pinecrest Golf Club, Inc. (Golf Club) appeals from the Montgomery County Common Pleas Court's (Common Pleas) October 26, 2023 order affirming the Montgomery Township (Township) Zoning Hearing Board's (Board) November 2, 2022 decision that denied Golf Club's appeal from the Township Zoning Officer's (Zoning Officer) February 16, 2022 Notice of Violation and Cease and Desist Order (Notice).  Golf Club presents three issue for this Court's review, one of which we find dispositive: whether the Notice contained the information required under Section 616.1 of the Pennsylvania Municipalities Planning Code (MPC).[1]  We conclude that the Notice did not contain the name of the property owner of record and did not sufficiently describe the alleged ordinance violations so that Golf Club could cure or challenge them.  Accordingly, we reverse.

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10616.1.

## I. BACKGROUND

### A. The Development

Golf Club owns PineCrest Country Club, a 109-acre property located at 101 Country Club Drive in the Township (Club Property). Golf Club developed the Club Property as a golf course in the late 1980s alongside a 55-acre residential development (Residential Property) that surrounds the Club Property. A related entity—Pinecrest Properties, Inc. (Pinecrest Properties)—owned and developed the Residential Property. A 1989 subdivision plan (Subdivision Plan) and December 1988 Erosion and Sedimentation Control Plan (E&S Plan) were recorded for the properties. Because the properties were developed together, Golf Club and Pinecrest Properties entered into a March 1989 Easement Agreement and Declaration of Covenants and Restrictions (Easement Agreement) with each other. Pinecrest Properties also recorded a separate Declaration of Covenants, Easements, Conditions, and Restrictions (Declaration) in October 1989. The Declaration described how the Residential Property would be maintained once the individual lots on that property were sold to homeowners. It also provided for creation of a community association (Association) to manage open space on the Residential Property.

Golf Club built a comprehensive stormwater management system (System) on both properties for the use of both properties, as the E&S Plan and Easement Agreement contemplated. The system begins with drainage structures located on both properties, such as channels and swales, that catch stormwater runoff. Pipes and channels transport the runoff to detention ponds on the Club Property. The parties did not create any separate agreement about ongoing maintenance of the System (often called an O&M—operation and maintenance—

2

agreement) as is customary for new development projects today. The Subdivision Plan contains a note that the golf course and its associated facilities will be owned, operated, and maintained "by Klein Realty Co., its heirs or assigns." Reproduced Record (R.R.) at 25a. The Klein Company (together with Klein Realty Co., Klein) continues to operate the golf course on behalf of the Golf Club. The Easement Agreement granted Golf Club a perpetual easement over the Residential Property to build and maintain the System. In exchange, the Easement Agreement granted Pinecrest Properties and its assigns the right to use the System to manage its stormwater runoff. *Id.* at 217a. In 1994, Pinecrest Properties dedicated the streets on the Residential Property to the Township and ceded control of the community to the Association. The Association continues to use the System to manage its stormwater runoff.

## B. Enforcement Action

On August 31, 2021, the Township's Solicitor sent a letter to Klein alleging that there were maintenance problems with some stormwater basins on the Club Property. *See* R.R. at 655a-56a. The letter listed specific maintenance and repair recommendations for stormwater basins 3, 4, and 5 (as denominated on the E&S Plan) and advised that Klein must correct the maintenance deficiencies. *Id.* at 656a. The Golf Club received a copy of the letter and sent a letter in response asking the Township to identify what ordinance provisions the Golf Club was allegedly violating. *Id.* at 662a-63a. The Township did not reply.

On February 16, 2022, the Zoning Officer issued the Notice to Klein. R.R. at 665a-66a. The Notice was intended as an "enforcement notice" to initiate an enforcement action under Section 616.1 of the MPC. The Notice referenced the August 31 letter and stated that the maintenance and repairs to basins 3, 4, and 5

3

directed in that letter had not been completed.  Because of that, the Notice stated, Klein was in violation of (1) the Subdivision Plan, which included a note that Klein would maintain the golf course, and (2) Section 206-33 of the Montgomery Township Stormwater Management Ordinance (Ordinance).[2]

The Notice did not immediately impose any penalty for the violations, stating instead that the Township would not pursue "formal legal action" for a period of 90 days to allow Klein time to correct the violation.  *Id.* at 665a.  The Notice

_____

[2] The Ordinance, first enacted in 2014, is Chapter 206 within the Code of the Township of Montgomery (Township Code).  As applicable at the time of the Notice, Section 206-33 of the Ordinance requires plans for the ongoing operation and maintenance (O&M) of stormwater BMPs. BMPs—or best management practices—are the activities, facilities, designs, and other measures used to control and manage stormwater runoff.  Section 206-10 of the Ordinance (definitions).

Section 206-33 of the Ordinance provides, in relevant part:

D. The stormwater facility and BMP O&M plan for the project site shall establish responsibilities for the continuing O&M of all stormwater facilities and BMPs, as follows:

(1) If a plan includes structures or lots which are to be separately owned and in which streets, sewers and other public improvements are to be dedicated to the Township, stormwater facilities and BMPs may also be offered for dedication to and maintained by the Township.

(2) If a plan includes O&M by single ownership, or if sewers and other public improvements are to be privately owned and maintained, the O&M of stormwater facilities and BMPs shall be the responsibility of the owner or private management entity.

F. Facilities, areas, or structures used as BMPs shall be enumerated as permanent real estate appurtenances and recorded as deed restrictions or conservation easements that run with the land.

R.R. at 68a-69a (Section 206-33 of the Ordinance, *as amended* Jan. 4, 2016, by Ordinance No. 15-291).

4

advised Klein of its right to appeal to the Board, consistent with Section 616.1 of the MPC. The Golf Club, owner of the Club Property to which the Notice was directed, timely appealed to the Board.

## C. Hearing before the Board

The Board held hearings on August 3 and September 7, 2022. The Township first presented evidence of the violation as Section 616.1(d) of the MPC requires. It began with the testimony of Krista Brown, an environmental group manager for the NPDES (National Pollutant Discharge Elimination System) Stormwater Program at the Pennsylvania Department of Environmental Protection (DEP). R.R. at 326a. She explained that DEP investigated the Club Property in 2020 based on complaints that a storm pipe leading to a stormwater basin was broken and the basin was not holding stormwater. *Id.* at 335a. Ms. Brown monitors compliance with the Township's municipal separate storm sewer system (MS4) permit, which allows the Township to discharge stormwater runoff into water bodies. *Id.* at 361a, 372a. Based on her inspection, she concluded that the System was used to treat municipal stormwater and aspects of the System were not being maintained, placing the Township in violation of its MS4 permit obligations. *Id.* at 81a-83a, 342a-43a, 385-87a, 409a. Ms. Brown created a report of those findings and recommendations for how the Township could come into compliance. R.R. at 354a. Her recommendations included that the Township could enforce the Ordinance or private maintenance obligations for the System. *Id.* at 82a-83a, 387a-88a. She did not ascertain who is responsible for maintaining the System. *Id.* at 368a, 396a, 409a. It was ultimately up to the Township to decide how it would achieve compliance. *Id.* at 400a-03a.

The Township next called Zoning Officer Bruce Shoupe. R.R. 423a.

5

He stated that the Township concluded the Easement Agreement and the note on the Subdivision Plan (regarding maintenance by Klein) created obligations to maintain the System. *Id.* at 433a-34a, 440a. The Zoning Officer acknowledged that he advised sending the August 31 letter and then subsequently issued the Notice. *Id.* at 424a, 440a. Regarding the addressing of the Notice, he agreed that, in his view, the Notice was sent to Golf Club via Klein as its agent. *Id.* at 465a-66a. The Zoning Officer acknowledged that the sole ordinance basis for the violation set forth in the Notice is Section 206-33 of the Ordinance. *Id.* at 470a-73a. He clarified that the violation is not the absence of an O&M agreement—he acknowledged none has ever existed for the Club Property—but rather the failure to maintain the System as intended and designed is the violation. *Id.*

The Township then called James Dougherty, its engineer. R.R. at 517a. He agreed with Ms. Brown's assessment of the System's condition, confirmed that municipal stormwater enters the basins from the Township-owned streets, and noted that a portion of a pipe conveying stormwater from one street to a basin on the Club Property had disintegrated and is not functioning. *Id.* at 534a-35a. Mr. Dougherty explained that it would be unusual for a municipality to maintain a stormwater management system it did not own and suggested maintenance could be achieved by enforcement of the Township Code. *Id.* at 526a.

Golf Club presented the testimony of Cliff Stout, the engineer of record who created the plans for the Club Property and Residential Property when they were initially developed. R.R. at 552a. He explained that modern stormwater regulations did not exist at that time, so no stormwater management plans or stormwater management operation and maintenance agreement were created for the properties. *Id.* at 560a-67a.

6

## D. The Board's Decision

After the hearing, at a Board meeting on November 2, 2022, both parties presented oral argument on the legal issues raised in their respective proposed findings and conclusions submitted to the Board. After argument, the Board denied Golf Club's appeal. A formal written decision followed on December 15, 2022.

In its decision, the Board first concluded that the Notice was facially valid. It found as fact that Klein originally owned both properties and gained approval of the Subdivision Plan. R.R. at 742a, 744a. It recognized that under the Easement Agreement, Klein and "its heirs and assigns" are obligated to operate and maintain the golf course and its associated facilities. *Id.* at 742a. The Board noted that Golf Club is the record owner of the Club Property and that the Notice named only Klein, not Golf Club, but apparently concluded that Golf Club was properly noticed because it is the assignee of Klein and filed an appeal of the Notice. *Id.* at 751a.

Regarding the other elements of the Notice, the Board concluded that the Notice was sufficiently definite and specific in identifying basins 3, 4, and 5 as the basis for the violation. *Id.* at 748a. And it concluded that Section 206-33 of the Ordinance applies to the Club Property and the System (notwithstanding that the properties were developed before the Ordinance was passed) and that it imposes an ongoing maintenance obligation, such that a failure to maintain is a violation of the Ordinance. *Id.* at 751a-52a. In support, the Board cited the Easement Agreement and the Subdivision Plan as creating ongoing maintenance obligations. *Id.* The Board found the fact of the violations by expressly crediting Ms. Brown's testimony that parts of the System—specifically retention ponds 3, 4, and 5—were not properly maintained or repaired. R.R. at 751a.

7

Golf Club timely filed a notice of appeal in Common Pleas, which affirmed the Board's decision without taking additional evidence. Golf Club now appeals to this Court.

## II. ISSUES

On appeal,[3] Golf Club presents three issues. First, it argues the Violation Notice was defective on its face for failure to identify the owner of the property, the location of the violation, and a specific violation of an ordinance, all as required by Section 616.1 of the MPC. Second, Golf Club argues Chapter 206 of the Code—which was the basis for the Violation Notice—cannot apply retroactively to the Club Property, which was constructed before Chapter 206 was enacted. Third, Golf Club argues the evidence before the Board does not support its finding of a violation.

## III. DISCUSSION

Golf Club argues the Notice is defective because it lacks three pieces of information required by Section 616.1 of the MPC, which provides in relevant part as follows:

> (a) If it appears to the municipality that a violation of any zoning ordinance enacted under this act or prior enabling laws has occurred, the municipality shall initiate enforcement proceedings by sending an enforcement notice as provided in this section.
>
> (b) The enforcement notice *shall be sent to the owner of record of the parcel* on which the violation has occurred, to any person who has filed a written request to receive enforcement notices regarding that parcel, *and* to any other

---

[3] Where, as here, Common Pleas does not take additional evidence, our review is limited to determining whether the Board committed an abuse of discretion or an error of law. *Allegheny W. Civic Council, Inc. v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 689 A.2d 225, 227 (Pa. 1997).

person requested in writing by the owner of record.

(c) An enforcement notice shall state at least the following:

> (1) *The name of the owner of record* and any other person against whom the municipality intends to take action.
>
> (2) *The location of the property in violation.*
>
> (3) *The specific violation with a description of the requirements which have not been met, citing in each instance the applicable provisions of the ordinance.*

53 P.S. § 10616.1 (emphasis added).

"[T]he Section 616.1(c) requirements are mandatory" and "[a] municipality's failure to comply with Section 616.1 precludes it from seeking penalties under Section 617.2 of the MPC[, added by Act of December 21, 1988, P.L. 1329, 53 P.S. § 10617.2]." *Twp. of Robinson v. Esposito*, 210 A.3d 1146, 1149-50 (Pa. Cmwlth. 2019). We determine the violation notice's compliance with these requirements "from the four corners of the document, and extrinsic evidence is irrelevant and immaterial." *Id.* We have explained that the enforcement notice is a critical document because it is the formal beginning of an enforcement action against the property owner. Its contents give the owner formal notice of the violation, and it starts the clock on the time for the owner to cure the violation or file a timely appeal. *E&R Partners, LP v. Robinson Twp. Zoning Hearing Bd.*, 311 A.3d 1191, 1197 (Pa. Cmwlth.), *appeal denied*, 329 A.3d 1125 (Pa. 2024).

Golf Club first points out that the August 31, 2021 letter and the Notice were both addressed to and name only Klein, but Golf Club—not Klein—is the record owner of the Club Property. Golf Club's argument here is essentially twofold: the Notice was not "sent to the owner of record" under subsection (b) and

also did not "state . . . [t]he name of owner of record" under subsection (c)(1). The Township responds that since Klein is Golf Club's authorized agent, the Notice was sent to Golf Club through Klein, thus satisfying subsection (b). In support, the Township emphasizes the Zoning Officer's testimony that the Notice was effectively sent to Golf Club via Klein as its agent. In reply, Golf Club disputes assertions of a business relationship between it and Klein as outside the record. The Township also asserts, without elaboration, that the Notice states the name of the owner of record of the Club Property. Looking at the face of the Notice, we disagree.

The Notice is addressed to "Mr. Jim Tomaino" and "the Klein Company." R.R. at 665a. The subject line mentions "Pinecrest Country Club & Golf Course." *Id.* But the Notice never names "Pinecrest Golf Club, Inc.," which is the indisputable record owner of the Club Property. *See id.* at 665a, 751a. The Notice cites Section 616.1 and purports to satisfy it, appearing to include other statutory elements that Golf Club does not challenge here—the time to cure the violation, the right to appeal, and the possible sanctions. To the extent that the Township would rely on the August 31, 2021 letter sent before the Notice to satisfy Section 616.1, we note two problems with that position. First, the earlier letter is similarly addressed to the Klein Company and does not name or identify Pinecrest Golf Club, Inc., so it suffers from the same defect on this issue. Second, unlike the Notice, the August 31 letter does not satisfy any of the requirements of Section 616.1, which it would need to do independently to constitute a valid enforcement notice. *See Esposito*, 210 A.3d at 1150 n.7 ("[A] cease-and-desist letter may function as a Section 616.1 enforcement notice[, but] we note that a cease-and-desist letter so considered must still comply with the notice requirements of Section 616.1.").

In *Esposito*, we found the purported violation notice defective because, *inter alia*, it named and was sent to an individual partner rather than the limited partnership that was the record owner of the property.[4] *Id.* at 1150. If the difference between naming a partner and his partnership is fatal to a notice, then naming a separate corporation (like occurred here) is *a fortiori* also fatal. *See Jamestown Condo. v. Sofayov* (Pa. Cmwlth., No. 725 C.D. 2018, filed May 3, 2019), 2019 WL 2401318, at *2 (discussing history of close relation, though not identity, between partnerships and their partners, and contrasting them with corporations).[5] The Notice fails to comply with Section 616.1(c)(1) of the MPC, so it is invalid. *Esposito*, 210 A.3d at 1149-50.

Given the failure to name the record owner as the statute requires, whether sending the notice to Klein constituted sending it "to the owner of record" by a sort of agency relationship becomes an academic question. The purpose of the statutory requirements for violation notices is to give the property owner—who is ultimately responsible for the violation and has a finite time period in which to comply or appeal—formal notice of the enforcement action. *E&R Partners*, 311 A.3d at 1197. That is why the *Esposito* Court stated that even if the municipality intends the enforcement to encompass "other person[s]"—such as partners or agents—it "still would need to address the [notice to] the [p]roperty's owner of record." 210 A.3d at 1150. Here, even if the Notice had also been sent directly to Golf Club, it still did not identify Golf Club as the record owner of the property, so it would not provide the precise and formal notice the MPC requires.

---

[4] We noted in *Esposito* that the notice included what appeared to be an immaterial typographical error in the address to which it was sent, though we did not rely on that error for our disposition. 210 A.3d at 1150 n.10.

[5] Unreported opinions of this Court filed after January 15, 2008, may be cited for their persuasive value. Pa.R.A.P. 126(b); 210 Pa. Code § 69.414(a).

Regarding the Notice's description of the location of the property, Golf Club argues the Notice is deficient because it does not describe in detail which specific retention ponds were not maintained, and there was confusion in the testimony regarding which specific ponds were being discussed. It argues it cannot know how to cure the violation because it does not know exactly where on its property the violations are occurring. The Township responds that the Notice clearly names ponds 3, 4, and 5 "within golf course property," and references the August 31 letter, which in turn describes in detail the location of ponds 3, 4, and 5. On this point, we agree with the Township. The Notice leaves little doubt that it is the Club Property—as opposed to some other property—that is the subject of the Notice. That is consistent with Golf Club's October 14, 2021 response letter, in which it expressed uncertainty about the nature of the violations, but not the location of the basins discussed. *See* R.R. at 662a. The real confusion, and much of Golf Club's argument on this issue, is over what must be done, and where, on the Club Property to cure the alleged violations. We consider that to be part of the "specific violation[s]" requirement under subsection (c)(3), to which we now turn.

Golf Club's last argument for the Notice's deficiency is that it does not identify any specific violation of the Ordinance. Golf Club points out that the Notice cites only one ordinance provision—Section 206-33 of the Ordinance. It emphasizes that, as the Zoning Officer acknowledged, Section 206-33 refers exclusively to requirements under a "stormwater facility and BMP O&M *plan*," and that pursuant to that *plan*, maintenance of privately owned BMPs shall be the responsibility of the owner. R.R. at 470a-73a (emphasis added). Because BMP O&M plans did not exist when the Club Property was developed, Golf Club argues, the Notice's citation to Section 206-33 does not satisfy the MPC's requirement for a citation to the

12

ordinance for each specific violation. In response, the Township argues that the obligations created in the Easement Agreement and Subdivision Plan for ongoing maintenance apply to Golf Club "through" Section 206-33 of the Ordinance. Township's Br. at 20.

We are persuaded that the Notice did not sufficiently inform Golf Club of the nature of the specific violations alleged. The most specific information the Notice gave was that the identified basins were not adequately maintained. That matches the language of Section 206-33 of the Ordinance cited in the Notice, which also speaks of maintenance obligations. But the Notice does not tell Golf Club how much or what kind of maintenance or repair it must do to come into compliance with the Ordinance. We have allowed general descriptions of the violation only when they closely track the language of the zoning ordinance, in a way that places the owner on notice of the precise change to the property that would cure the violation. For example, a notice that "used the more general words 'industrial activity' rather than the more precise 'trash-hauling'" was sufficient because both uses—the broader and the narrower—were effectively prohibited by the zoning ordinance, so the property owner did not need to guess about how to cure the violation—she need only cease the obvious nonconforming use. *Twp. of Lower Milford v. Britt*, 799 A.2d 965, 970-71 (Pa. Cmwlth. 2002). Similarly, a notice that identified an unpermitted "accessory structure" did not need to explain that the structure was a "trailer" because the term "accessory structure" was defined in the zoning ordinance and was obviously applicable, leaving no doubt. *Commonwealth v. Litman*, 280 A.3d 340 (Pa. Cmwlth., Nos. 499, 525, 554-55 C.D. 2021, filed May 6, 2022) 2022 WL 1437684, at *6. In these decisions, the notice used general terms but the violation was clear, as was the action the owner must take to comply.

13

Here, the Ordinance does not serve to say what action would be sufficient to comply. The Ordinance does not define "maintenance." R.R. at 39a-51a (Ordinance definitions). Unlike in *Britt* and *Litman*—where the zoning ordinances' categorical definitions left no real questions—Golf Club lacks adequate notice about what actions it must take to cure the violation. Thus, we hold that the Notice fails to identify "[t]he specific violation with a description of the requirements which have not been met," and for that additional reason it is invalid under Section 616.1 of the MPC.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the Violation Notice which Golf Club appealed to the Board was fatally defective because it failed to include the information required by Section 616.1 of the MPC. For that reason, Common Pleas erred in dismissing Golf Club's appeal. *See Esposito*, 210 A.3d at 1151. Accordingly, we reverse Common Pleas' order.[6]

_____

MATTHEW S. WOLF, Judge

---

[6] Given this conclusion, we do not reach the remaining issues Golf Club raises on appeal.

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of: Pinecrest Golf Club,  :
Inc. From the Decision Dated  :
November 2, 2022, of the Montgomery  :
Township Zoning Hearing Board  :
                                   :   No. 1444 C.D. 2023
Appeal of: Pinecrest Golf Club, Inc.  :

# O R D E R

AND NOW, this 1st day of April 2025, the October 26, 2023 order of the Court of Common Pleas of Montgomery County is REVERSED.

_____
MATTHEW S. WOLF, Judge